UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS PIERCY on behalf of himself and
all others similarly situated,

                Plaintiff,

     -vs-

AIR CANADA,

          Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

Thomas Piercy alleges the following against Defendant Air Canada.

## <u>INTRODUCTION</u>

1.     This is a proposed class action asserting claims on behalf of Air Canada customers who were denied refunds after Defendant Air Canada canceled their flights beginning on March 1, 2020 due to the novel coronavirus pandemic ("COVID-19").

2.     In an attempt to control the spread of COVID-19, governments implemented public health measures such as curfews, lockdowns, and travel restrictions, all of which contributed to a sharp decrease in demand for commercial air travel.

3.     Initially, Air Canada reduced its operations to match lower customer demand by canceling and suspending some of its flights. In a March 18, 2020 press release, Air Canada said that it would gradually suspend the majority of its flights by March 31, 2020.

4.     Subsequently, as much as 95% of Air Canada's flights stopped operating, leaving the airline flying to less than half of the destinations that it serviced.

5.     Air Canada only began to resume service to some airports in the United States on May 22, 2020, and tentatively announced plans to add more service throughout the summer of 2020.

6.     When Plaintiff and the Class members bought their tickets, Air Canada had

promised customers a refund in situations where Air Canada cancels their flight. This promise was set forth on Air Canada's "Refund Options" page on its website and in the terms and conditions of every Air Canada ticket.

7.      Air Canada canceled hundreds of flights because of the COVID-19 pandemic but the airline reneged on its point of sale promise to refund the money customers paid for flights that Air Canada canceled. Air Canada has refused to return the money that Plaintiff and thousands of other customers paid for Air Canada tickets.  Instead, the airline is forcing customers to accept either Air Canada travel vouchers or credits.

8.      Air Canada's refusal to issue refunds after cancelling hundreds of flights breached its contractual obligations and damaged Plaintiff and Class members.

## PARTIES

**Plaintiff:**

9.      Plaintiff Thomas Piercy is, and was at all times herein alleged, a citizen of the State of New York and currently resides in New York, New York.

10.     On January 29, 2020, Plaintiff paid approximately $1,076.00 for a round trip ticket between New York and Tokyo, departing New York on February 16, 2020 and returning on April 30, 2020.

11.     In early April 2020 Defendant canceled Plaintiff's flight from Tokyo to New York due to the COVID-19 pandemic.

12.     Plaintiff requested a refund from Defendant but Defendant refused to provide the refund.

**Defendant:**

13.     Defendant Air Canada is the largest Canadian airline.  Its principal place of business is in Montreal, Quebec, Canada.

14.     At all relevant times, Defendant was present and doing business in New York

and in this District, including flying from airports in New York, having an office in this District, and offering its stock for sale on the New York Stock Exchange in this District.

15.     Defendant transacted, solicited, and conducted business in the State of New York and derived substantial revenue from that business in this District.  Air Canada maintains an office at 1133 Avenue of the Americas, New York, New York in this District.

16.     At all relevant times, Defendant expected or should have expected that its acts would have consequences in New York and in this District.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act, 28 U.S.C.§ 1332(d)(2); the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs. Plaintiff is a citizen of New York and Defendant, for diversity purposes, is a citizen of Montreal, Quebec, Canada. There are more than 100 members of the Class.

18.     This Court has personal jurisdiction over Defendant pursuant to and consistent with the Constitutional requirements of Due Process in that Defendant, acting through its agents or apparent agents, committed one or more of the following:

      a.     transacted business within the state and within this District;

      b.     contracted within the state and within this District;

      c.     committed a tortious act within this state and District; and

      d.     owned, used, or possessed any real estate situated within this state, including its office in this District.

19.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant because Defendant is present in this state and District, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

20.     Defendant Air Canada has availed itself of the laws of the New York and has sufficient and numerous contacts with New York and this District.  It sells tickets in this District, it maintains an office in this District, and its stock trades on the New York Stock Exchange in this District.

21.     Requiring Defendant to litigate these claims in New York and in this District does not offend traditional notions of fair play and substantial justice.

22.     Plaintiff's claims arise in part from conduct Defendant purposefully directed to New York, including selling Plaintiff a ticket for an international flight originating in New York.

23.     Defendant transacted, solicited, and conducted business in New York and in this District and derived substantial revenue from such business.

24.     Venue is properly set in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business and maintains substantial operations in this District; Plaintiff and other class members reside in this District; a substantial portion of the events giving rise to the claims alleged herein occurred in this District; and because Air Canada entered into transactions and received substantial profits from customers who reside in this District.

**SUBSTANTIVE ALLEGATIONS**

25.     On January 29, 2020, Mr. Piercy booked a round trip Air Canada flight from New York to Tokyo.  Plaintiff paid $1,074.00 for his tickets.

26.     Plaintiff's flights were scheduled to depart New York to Tokyo on February 16, 2020 and to return from Tokyo to New York on April 30, 2020.

27.      Air Canada contacted Plaintiff in early April, 2020 to tell him that the airline had cancelled his return flight due to COVID-19.

28.     Plaintiff requested a refund from Air Canada after it canceled his flights, but

instead of refunding Plaintiff's money, Air Canada told Plaintiff that he could only receive an

Air Canada flight voucher which would be valid for the next 24 months.

29.     Air Canada's ticket terms and conditions, also known as the International Tariff

General Rules Application to Transportation of Passengers and Baggage, explicitly state that

the airline "will refund the unused portion of the ticket … " when a situation occurs that

triggers an "Involuntary Refund."

30.     Rule 100(D)(1)(a) of Air Canada's terms and conditions explains:

> … [T]he term 'Involuntary Refund' shall mean any refund …
> that is made if, due to reasons within Air Canada's control or
> required for safety purposes, the passenger experiences a delay
> of three hours or more, a denial of boarding or cancellation, and
> refuses alternate travel arrangements offered because they do not
> accommodate their travel needs …

31.     When Plaintiff bought his tickets from Air Canada, its "Refund Options" page

on its website stated, "In the event of a cancellation or a delay of more than two hours, Air

Canada offers you the option of requesting a refund for the unused portion of your ticket or

using the unused portion toward future travel with us."

32.     However, on May 22, 2020, well after Mr. Piercy bought his tickets, Air

Canada changed the language on its website to reflect that because the airline considers

cancellations due to COVID-19 to be "situations outside of the airline's control," only

vouchers, and not refunds, would be offered if Air Canada canceled a customer's flight due

to COVID-19.

33.     Defendant changed the language on its "Refund Options" page to state:

> In the event of a flight cancellation or a delay of more than three hours,
> for situations other than those outside our control, Air Canada offers
> you the option of requesting a refund for the unused portion of your
> ticket, or using the unused portion toward future travel with us.
> Cancellations resulting from the COVID-19 crisis are considered
> outside our control.

(emphasis supplied).

34.    When Plaintiff and Class members bought their Air Canada tickets, the "Refund Options" did not contain the language underlined in the quote above.

35.    Air Canada changed its refund policy after it sold thousands of tickets to customers like Plaintiff in a belated attempt to legitimize its unfair practice of denying customers refunds for flights that Air Canada canceled due to COVID-19.

36.    However, that additional language cannot erase Air Canada's original obligation to offer customers like Plaintiff a full refund when Air Canada cancels a flight due to safety purposes, including a pandemic.

37.    Defendant also announced that customers whose flights had been canceled due to COVID-19 and who had already received the travel credit valid for  only 24 months will be able to select either the fully transferrable voucher or Aeroplan Miles beginning June 15, 2020.

38.    When he decided to purchase Air Canada tickets, Plaintiff relied on Defendant's promise to offer a refund option in the event of an airline-induced flight cancellation.

39.    Plaintiff would not have purchased the tickets or would have booked his flights with another airline had he known that Air Canada would renege on its promise.

40.    Air Canada has failed to perform its obligations under its contract with Plaintiff and the similarly situated Air Canada customers by refusing to offer full fare refunds after Air Canada canceled their flights.

41.    Air Canada is wrongfully keeping all of the money customers paid for canceled flights.

42.    Because Air Canada has canceled so many of its flights indefinitely due to COVID-19 and refuses to refund fares, thousands of passengers, like Plaintiff, not only missed

out on fulfilling their original travel plans, but also have been left holding Air Canada vouchers or miles that are presently useless to them instead of obtaining a refund as promised.

43.     Defendant's vouchers and miles are particularly inadequate when compared to a full refund because the future validity and usefulness of those vouchers and miles depends in large part on the continued financial health and existence of Air Canada, which Air Canada cannot promise.

44.     The refunds at issue rightfully belong to Plaintiff and similarly situated Class members because Air Canada made a contractual promise to refund the ticket price to customers if Air Canada were to cancel flights.

45.     Consequently, Defendant's refusal to provide refunds based on its revision of the refund policy on its website breached its contractual promises.

46.     Defendant's flight cancellations and subsequent refusal to refund Plaintiff's and Class members' ticket purchase price as it originally promised has unlawfully deprived Plaintiff and the Class of receiving the benefit of their bargain.

47.     Plaintiff and Class members relied on Defendant's contractual promises when they purchased tickets from Defendant. These promises were part of the uniform contract between Defendant on the one hand and Plaintiff and Class members on the other.

48.     Defendant's belated change in the language of its refund policy and *ex post facto* application of this new policy to Plaintiff and Class members is deceptive because it purports to absolve Defendant of its obligation under its terms and conditions and original refund policy to refund the ticket price when Defendant cancels flights for safety purposes.

49.     Had Plaintiff and Class members known that Defendant would not abide by its promise to refund the fare they paid for flights that Defendant canceled, that information would have influenced them to either not buy the tickets, to pay a lower price, or to buy tickets from another airline. Defendant's unfulfilled promise to refund the full price customers paid

7

for a ticket on a subsequently canceled flight has caused financial harm to Plaintiff and hundreds or thousands of customers.

50.     Thousands of customers affected by Defendant's unlawful conduct have signed petitions, some have spoken with the press, and many have taken to social media to voice their indignation with Defendant's deceptive refund policy.

51.     For example, the comments sections on Defendant's recent Facebook, Instagram, and Twitter posts feature many disgruntled Air Canada customers who have been cheated by Defendant's refusal to refund the money they paid for now canceled flights.

52.     Furthermore, in its April 3, 2020 "Enforcement Notice Regarding Refunds By Carriers Given The Unprecedented Impact Of The COVID-19 Public Health Emergency On Air Travel" the USDOT reminded the public and "U.S. and foreign carriers" operating at least one aircraft with a seating capacity of 30 or more that:

> passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed. Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.
>
> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with nonrefundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable. Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights

> that carriers cancel or significantly delay does not cease when
> the flight disruptions are outside of the carrier's control (e.g., a
> result of government restrictions). The focus is not on whether
> the flight disruptions are within or outside the carrier's control,
> but rather on the fact that the cancellation is through no fault of
> the passenger. Accordingly, the Department continues to view
> any contract of carriage provision or airline policy that purports
> to deny refunds to passengers when the carrier cancels a flight,
> makes a significant schedule change, or significantly delays a
> flight to be a violation of the carriers' obligation that could
> subject the carrier to an enforcement action.

53.     Thus, Defendant's unlawful refusal to offer full refunds to Plaintiff and Class

members after canceling their flights due to COVID-19 violates its obligation and its promise

to refund money to Plaintiff and the Class.

## CLASS ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(1)(B),

and b(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff and the following class

of persons similarly situated (the "Class"):

> All U.S. residents who bought Air Canada flight tickets with
> scheduled travel dates between March 1, 2020 through the date
> of a class certification order and who Defendant deprived of a
> full refund after Defendant canceled their flights due to COVID-
> 19.

55.     Numerosity. The members of the Class are so numerous and dispersed that it

would be impracticable to join them individually. While Plaintiff does not know the exact

number of Class members at this time, Plaintiff believes there are at minimum, hundreds of

Class members. Defendant's records of flight ticket sales contain sufficient information to

determine the exact number of persons in the Class.

56.     Commonality. Common questions of law and fact exist as to all members of

the Class and predominate over any questions affecting solely individual members of the

Class. Among the questions of law and fact common to the Class are:

a.     Whether Defendant breached its contract with the Class and Plaintiff

by refusing to refund the money they paid for flights that Defendant canceled during the Class

Period;

        b.     Whether Air Canada's flight ticket terms and conditions and original

refund policy entitle Plaintiff and Class members to a full refund;

        c.     Whether Defendant will be unjustly enriched if allowed to keep the

money Plaintiff and Class members paid for flights that Defendant canceled;

        d.     Whether Defendant change in the language of its refund policy on the

airline's website after Plaintiff and the Class bought their tickets violates §§ 349 and 350 of the

New York Gen. Bus. Law;

        e.     The amount of damage the Plaintiff and Class members suffered; and

        f.     Whether Plaintiff and Class members are entitled to a reasonable award

of attorneys' fees, interest, and costs of suit.

57.     Typicality. Plaintiff's claims are typical of the claims of the Class members

because Plaintiff, like all Class members, is a customer who purchased flight tickets that

Defendant led him to believe were refundable if Defendant canceled his flights, but Defendant

instead wrongfully refused to refund Plaintiff's money after Defendant canceled his flight due

to COVID-19. Plaintiff's claims are typical of each Class Member's claims in that Plaintiff's

claims and each Class Member's claims arise from Defendant's uniform misconduct; each

Class Member and Plaintiff will make similar legal arguments in proving that they have

suffered harm arising from Defendant's unfair refusal to provide refunds; and Plaintiff and

Class members seek similar relief.

58.     Adequacy. Plaintiff will fairly and adequately represent and protect the

interests of the members of the Class and has retained counsel competent and experienced in

class actions and complex litigation. Plaintiff's attorneys will actively conduct and be

responsible for prosecuting this litigation, and have adequate resources, experience, and

commitment to litigate this matter. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.     Superiority. Further, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, and this matter would be easier to manage as a class action rather than a series of individual suits. Proceeding as a class action will allow judicial supervision and thereby greater protection of Class members and proceeding as a class action will allow for the possibility of class notice, or of periodic class notices, to benefit the Class members. Moreover, the class mechanism is particularly appropriate in this case because many of the Class members are likely owed a relatively modest amount which might not justify the cost of individual litigation.

60.     Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from Defendant's records of flight ticket sales. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

32.     Rule23(b)(1)(B) Requirements. Class action status is also warranted under Rule 23(b)(1)(B) because prosecuting separate actions by Class members would create the risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other members not party to the actions, or substantially impair or impede their ability to protect their interests.

33.     Rule 23(b)(3) Requirements. The requirements of Rule 23(b)(3) are also satisfied because questions of law or fact common to Plaintiff and Class members predominate over questions affecting only individual members, such as individual Class members' damages amount. Plaintiff and each member of the Class were aggrieved by Defendant's recent practices and generalized evidence equally applicable to all Class

members will establish Defendant's liability. There are no statute of limitations issues that defeat predominance.

COUNT I

BREACH OF CONTRACT

34.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

35.     Defendant promised airline flights to customers who paid Defendant's fares. Defendant also promised in its terms and conditions and pre-COVID-19 refund policy to refund customers' money if it canceled their flights.

36.     Defendant's refund policy as set forth on the "Refund Options" page stated, "In the event of a flight cancellation or a delay of more than two hours, Air Canada offers you the option of requesting a refund for the unused portion of your ticket or using the unused portion toward future travel with us."

37.     Defendant's ticket sale terms and conditions state that it would offer customers a refund if: " … due to reasons within Air Canada's control or required for safety purposes, the passenger experiences a delay of three hours or more, a denial of boarding or cancellation, and refuses alternate travel arrangements offered because they do not accommodate their travel needs."

38.     Defendant therefore entered a contract with Plaintiff and Class members.

39.     Defendant did not produce the flights Plaintiff and Class members paid for because it canceled their flights. Nor did Defendant produce the refund option it promised in the event of an Air Canada-induced cancellation; it instead offered only Air Canada vouchers or Aeroplan Miles to Plaintiff and Class members.

40.     Defendant breached this contract when it did not deliver on its promise to provide the flights Plaintiff and Class members paid for and when it refused to give them the

option for a refund.

41.     Plaintiff and the Class seek damages from Defendant for its breach of contract.

42.     As a result of the breach, Plaintiff and Class members have suffered injury because they paid for flights they never got to take and never obtained the refund option they were promised.

## COUNT II

## CONVERSION

43.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

44.     Plaintiff and Class members have a possessory interest in the flight cancellation refund money at issue.

45.     Defendant's intentional and unauthorized exercise of dominion and control over the refunds has interfered with the possessory right of Plaintiff and the Class members.

46.     Defendant promised in its terms and conditions and refund policy to offer refunds to Plaintiff and Class members if it canceled their flights. Defendant canceled the flights of Plaintiff and Class members due to COVID-19, triggering its obligation to offer refunds. However, instead of returning the money, Defendant has wrongfully taken control of the money for its own use and is preventing Plaintiff and the Class from obtaining the refund to which they are entitled.

47.     The refund money is segregated in a specifically identifiable manner as Plaintiff and each Class member paid Defendant a specific total dollar amount in fees and taxes.

48.     As a direct and proximate cause of Defendant's conversion, Plaintiff and Class members suffered damages in the total amount of the payments made by Plaintiff and each Class member for Air Canada tickets during the Class Period for a flight that Air Canada

canceled or subjected to a delay of more than three hours.

## COUNT III

## UNJUST ENRICHMENT

49.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

50.     Defendant acquired money from Plaintiff and members of the Class by misleadingly claiming that its tickets were not refundable if the trip was canceled by Air Canada due to COVID-19. Defendant's original refund policy and the terms and conditions of its ticket sales entitle Plaintiff and Class members to refunds despite Defendant's misleading claim.

51.     Defendant will be unjustly enriched if it is allowed to keep the money Plaintiff and Class members paid for the tickets that Defendant later misleadingly claimed were not refundable.

52.     Equity and good conscience require that Defendant refund the money that Plaintiff and Class members paid to purchase tickets for their now canceled flights. Defendant will be unjustly enriched if not required to refund the money and Plaintiff and Class members will be left without an adequate remedy at law.

## COUNT IV

## New York General Business Law §§ 349-350

53.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

54.     As alleged in this Complaint, Defendant committed unfair or deceptive acts and practices when it misrepresented to customers that it was not obligated to refund the money

customers paid for flights that Defendant canceled due to COVID-19.

55.     Defendant's deceptive acts and practices were directed at consumers and have a broad impact on consumers.

56.     Defendant's deceptive acts and practices are misleading in a material way because they misrepresent Defendant's terms and conditions of ticket sales.

57.     Defendant's deceptive acts and practices caused Plaintiff and Class members injury because they bought Air Canada tickets when Defendant's original refund policy and terms and conditions of ticket sales represented that the fees were refundable if Defendant canceled their flight, but after the sale Defendant changed the language of its refund policy and falsely claimed that the tickets were not refundable due to COVID-19. Defendant has withheld the refunds from Plaintiff and Class members.

58.     Defendant's post-purchase changes in the language of its refund policy are false statements and misrepresentations of fact that were directed at consumers, constitute false advertising, and have caused Plaintiff and Class members to suffer economic injury.

**59.**     Defendant's conduct violates sections 349 and 350 of the New York General Business Law. As such, Plaintiff and the Class are entitled to treble damages.

### COUNT V

### <u>MONEY HAD AND RECEIVED</u>

60.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

61.     Plaintiff and Class Members paid money to Defendant for ticket fees which was meant to be used for the benefit of Plaintiff and the Class.

62.     The ticket fee money was never used for the benefit of Plaintiff or for the benefit of the Class members because Defendant cancelled their flights and Defendant refuses to refund to Plaintiff and the Class members the money that it obtained unlawfully.

63.    Defendant has kept all the money Plaintiff and Class members paid for the canceled flights.

## JURY DEMAND

64.    Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on his behalf and on behalf of the Class, prays for judgment and relief as follows:

a.   An order certifying that this action may be maintained as a class action, appointing Plaintiff as the Class representative, and appointing Plaintiff's undersigned counsel as the Lead Counsel for the Class.

b.   Actual damages to Plaintiff and Class;

c.   Punitive and statutory damages, as allowable by law;

d.   Pre- and post-judgment costs, interest, and attorneys' fees; and

e.   Such other and further relief as this Court may deem appropriate and equitable.


DATED:      June 29, 2020

Respectfully submitted,


SQUITIERI & FEARON, LLP

By:      /s/      Stephen J. Fearon, Jr.
                  Stephen J. Fearon, Jr.

STEPHEN J. FEARON, JR.
32 EAST 57TH STREET, 12TH FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE:    (212) 421-6492
FACSIMILE:    (212) 421-6553
STEPHEN@SFCLASSLAW.COM


ATTORNEY FOR PLAINTIFF