**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THOMAS PIERCY, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:20-cv-04988 (PMH) |
| v. | ) | |
| | ) | |
| AIR CANADA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT AIR CANADA'S MOTION TO DISMISS CLASS ACTION COMPLAINT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................2

     A.    PLAINTIFF'S TICKETING AND ALLEGATIONS ..........................................2

     B.    AIR CANADA'S CONTRACT OF CARRIAGE AND
          INTERNATIONAL TARIFFS ..............................................................................3

     C.    AIR CANADA'S WEBSITE ..................................................................................5

     D.    DOT ENFORCEMENT NOTICE AND FREQUENTLY ASKED
          QUESTIONS .............................................................................................................5

STANDARD FOR RULE 12(B) DISMISSAL ............................................................................6

ARGUMENT ..................................................................................................................................7

I.      PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY THE AIRLINE
       DEREGULATION ACT ....................................................................................................7

     A.    THE ADA'S BROAD SCOPE MANDATES DISMISSAL OF
          PLAINTIFF'S STATE LAW CLAIMS ..................................................................7

     B.    PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BECAUSE
          THEY RELATE TO AIR CANADA'S "PRICES" AND "SERVICES" ................9

     C.    PLAINTIFF'S BREACH OF CONTRACT CLAIM DOES NOT FALL
          WITHIN THE NARROW *WOLENS'* EXCEPTION ...........................................11

II.    THE DOT ENFORCEMENT NOTICE DOES NOT PROVIDE A BASIS FOR A
      CAUSE OF ACTION AGAINST AIR CANADA ...........................................................13

III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST AIR CANADA .........................14

     A.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
          CONTRACT .............................................................................................................14

     B.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONVERSION
          (COUNT II), UNJUST ENRICHMENT (COUNT III), AND MONEY
          HAD AND RECEIVED (COUNT V) ...................................................................17

     C.    PLAINTIFF FAILS TO STATE A CLAIM FOR DECEPTIVE ACTS OR
          PRACTICES AND FALSE ADVERTISING (COUNT IV) ...............................19

CONCLUSION .............................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Krys v. Pugott*,
749 F.3d 117 (2d Cir. 2014)................................................................................6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD1775(JG)(VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008).........................11

*Alatortev v. JetBlue Airways, Inc.*,
No. 3:17-cv-04859, 2018 WL 784434 (N.D. Cal. Feb. 7, 2018)................................10, 12, 13

*Alexander v. Bd. of Educ.*,
107 F. Supp. 3d 323 (S.D.N.Y. 2015).........................................................7

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995).......................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................6

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007)........................................................10

*Buonasera v. Honest Co., Inc.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016)........................................18, 19, 20

*Castanares v. Deutsche Lufthansa AG*,
No. 20-cv-4261, 2020 WL 6018807 (C.D. Cal. Oct. 9, 2020) ................................13

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)........................................................7

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
123 F. Supp. 2d 133 (S.D.N.Y. 2000)........................................18, 19

*Cohen v. Dunne*,
No. 15 CIV. 3155 (DAB), 2017 WL 4516820 (S.D.N.Y. Sept. 27, 2017)...........................18

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA.*,
No. 20-cv-767, 2020 WL 5625740 (C.D. Cal. Sept. 17, 2020) ................................12

*In re EVIC Class Action Litig.*,
    No. 00-cv-3811, 2002 WL 1766554 (S.D.N.Y. 2002) ...........................................................11

*Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*,
    819 F. Supp. 2d 247 (S.D.N.Y. 2011).....................................................................................7

*Gordon v. United Cont'l Holding, Inc.*,
    73 F. Supp. 3d 472 (D.N.J. 2014) ........................................................................................11

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)....................................................................................................14

*Hekmat v. U.S. Transportation Sec. Admin*,
    247 F. Supp. 3d 427 (S.D.N.Y. 2017)....................................................................................9

*Howell v. Alaska Airlines*,
    99 Wash. App. 646, 994 P.2d 901 (2000)............................................................................12

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)..................................................................................18

*Lehman v. USAIR Group*,
    930 F. Supp. 912 (S.D.N.Y. 1996) ......................................................................................10

*Maree v. Deutsche Lufthansa*,
    No 20-cv-885, 2020 WL 6018806 (C.D. Cal. Oct. 7, 2020) ................................................13

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)...................................................................................................... *passim*

*Northwest, Inc. v. Ginsberg*,
    134 S. Ct. 1422 (2014).......................................................................................................8, 9

*Perks v. TD Bank, N.A.*,
    444 F. Supp. 3d 635 (S.D.N.Y. 2020)...............................................................14, 15, 17, 19

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008)...............................................................................................................7

*Sanchez v. Aerovias de Mexico, S.A. de C.V.*,
    590 F.3d 1027 (9th Cir. 2010) .............................................................................................10

*Schultz v. United Air Lines, Inc.*,
    797 F. Supp. 2d 1103 (W.D. Wash. 2011)......................................................................12, 13

*Synovus Bank of Tampa Bay v. Valley Nat'l Bank*,
    487 F. Supp. 2d 360 (S.D.N.Y. 2007).................................................................................13

*Volodarskiy v. Delta Air Lines, Inc.*,
    No. 11 C 00782, 2012 WL 5342709 (N.D. Ill. Oct. 29, 2012) ................................................12

**Statutes**

49 U.S.C. § 1450(c)(1) ................................................................................................................7

49 U.S.C. § 41712 ........................................................................................................................5

Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ................................................ *passim*

Federal Aviation Administration Authorization Act of 1994 ........................................................7

Illinois Consumer Fraud and Deceptive Practices Act ..................................................................8

N.Y. Gen. Bus. Law. § 349 and § 350 ......................................................................................2, 9

**Other Authorities**

14 C.F.R. §§ 253.4(a), 253.5 (a) ............................................................................................3, 15

84 Fed. Reg. 71714, 71732 (Dec. 27, 2019) ..............................................................................13

Fed. R. of Civ. P. 12(b) ................................................................................................................6

## PRELIMINARY STATEMENT

This putative class action complaint arises from the extreme, unprecedented impact that the COVID-19 global pandemic has had on the aviation industry.  Government-imposed travel restrictions and health and safety risks beyond the control of any carrier, including Air Canada, have resulted in forced cancellations of certain flights by airlines.  Air Canada has offered passengers whose flights have been cancelled the option—depending on the type of ticket purchased—of a refund or a future travel credit *consistent with* the applicable contract of carriage and tariffs.  In April, the Department of Transportation (DOT) issued certain guidance suggesting that refunds should be made by all airlines, which is inconsistent with Air Canada's (and other airline's) contract of carriage.  In recognition of this, the DOT has since clarified that its guidance does not have the "force and effect" of law, and acknowledged that refunds are not necessarily required by the underlying contracts.  The DOT's clarification notwithstanding, many putative class action complaints (like this one) were filed against airlines across the industry seeking relief that was not contemplated by the applicable contract: refunds for otherwise non-refundable tickets that were cancelled by the airlines due to Government-imposed travel restrictions as a result of an unforeseen global pandemic.

Here, Plaintiff, in his individual capacity and on behalf of those similarly situated, asserts five-separate state law claims against Air Canada because Air Canada offered him a travel voucher, as opposed to a full cash refund.  Plaintiff's claims are expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1), which unambiguously preempts state common law and statutory consumer protection claims that relate to an air carrier's "prices" and "services."  Plaintiff's claims here − arising from airline ticket refund and cancellation policies −clearly relate to an airline's prices and services.  Plaintiff's breach of contract action likewise faces preemption

1

because it relies on alleged obligations outside of the contract, including those based on the DOT's now-abrogated guidance.

Even if not preempted, the Complaint fails to state any viable claim for relief and must be dismissed as Air Canada did not breach its agreement with Plaintiff. The applicable agreement did not entitle Plaintiff to a refund but simply to a travel voucher: non-refundable tickets are by definition, non-refundable. Plaintiff has otherwise failed to state a claim for relief on his other state law causes of action.

Accordingly, Air Canada moves for an order dismissing the Complaint in its entirety.

## STATEMENT OF RELEVANT FACTS

### A.    Plaintiff's Ticketing and Allegations

On or about January 29, 2020, Plaintiff purchased a non-refundable roundtrip flight on Air Canada from New York, New York to Tokyo, Japan. *See* Compl. ¶ 10. Plaintiff was scheduled to depart on February 16, 2020 (and did so) and return on April 30, 2020. *Id.* Plaintiff alleges that Air Canada cancelled his return flight in early April, 2020, *i.e.*, after the U.S. government and the Japanese government implemented measures to preclude all non-essential traveling due to the Covid-19 pandemic, which essentially closed the borders and halted all traffic.[1] Compl., ¶ 11.

Plaintiff asserts common law claims of breach of contract, conversion, unjust enrichment, deceptive acts or practices and false advertising (N.Y. Gen. Bus. Law. § 349 and § 350), and money had and received based on Air Canada's decision to issue him a voucher for future travel, as opposed to a refund. He bases these causes of actions on the DOT's guidance concerning refunds, an erroneous provision of the applicable contract concerning involuntary refunds, and a quick-

---

[1] Available at: https://jp.usembassy.gov/health-alert-us-embassy-tokyo-april3-2020/

reference webpage on Air Canada's refund policy—not the applicable contract of carriage and general principles of law.[2]

### B.   Air Canada's Contract of Carriage and International Tariffs

Two documents govern Plaintiff's transportation with Air Canada: (1) General Terms and Conditions of Carriage listed in a passenger's itinerary and provided on the website ("General Terms"); and (2) International Tariff: General Rules Applicable to the Transportation of Passengers and Baggage (the "Tariffs").  Both are incorporated by reference into every passenger's contract for transportation.  *See* 14 C.F.R. §§ 253.4(a), 253.5 (a); *see also* Declaration of Sarah G. Passeri, Ex. A ("General Terms") and Ex. B ("Tariffs") in effect on January 29, 2020, *i.e.*, the date of contract.  However, both are subject to change at any point prior to travel.[3]  Plaintiff also relies on the Tariffs in his Complaint, as well as other portions of Air Canada's website.  *See* Compl., ¶¶ 30, 33.

The applicable provisions with respect to delays and cancellations *outside of Air Canada's control* can be found in two places:

*First*, Paragraph 2 of the General Terms:

> If your flight is delayed by more than three hours or cancelled because of a situation that's *outside of our control*, here's how your travel plan will be accommodated:
>
> - We'll rebook you on the next available Air Canada, Air Canada Rouge or Air Canada Express flight or on one of our partner airlines on a reasonable route

---

[2] *See, e.g.*, DOT Order 2012-11-4 at 5 ("To require carriers, as the petitioner urges, to offer full refunds or a penalty-free ticket change for any schedule change would represent an unwarranted intrusion into the operational decisions of air carriers and would not be in the public interest. . . . Passengers can choose whether to buy a refundable or nonrefundable ticket at the time of purchase and can choose between carriers offering different fare products."); DOT Order 2003-3-11 at 2 ("Thus, the lower price for non-refundable tickets is a trade-off for passengers agreeing to a restriction that allows a carrier to manage its inventory and cash flow. The public benefits in low fares found to exist under our present deregulated fare environment could be undone by the government intrusion requested by petitioner. . . . [S]uch [cancellation] policies, in a deregulated environment, provide carriers with flexibility in pricing and inventory control that is generally beneficial to the industry and to the public.").

[3] Pursuant to Rule 5(D), "conditions of carriage are subject to change without notice; provided that no such change shall apply to a contract of carriage after the carriage has commenced."  *See* Ex. A.

from the same airport, within 48 hours of the end of the event that caused the delay or cancellation; or

- If we cannot do this, we'll re-route you on any carrier via any reasonable air route to your destination or re-route you from another airport that is within a reasonable distance of your departure airport to your destination (if any) …

- *Should you refuse alternate travel arrangements offered because your travel no longer serves a purpose, please note that any refund is subject to the fare rules applicable.*

*Second*, Rule 75(A)(1) of the Tariffs allows the carrier to refuse transportation where:

Such action is necessary to comply with any governmental regulations … or whenever such action is necessary or advisable by reason of weather or other conditions beyond its control (including but without limitation: acts of god, force majeure, strikes, civil commotions, embargoes, wars, hostilities or disturbances) actual, threatened or reported.

In any case, the refund or credit provided is expressly "subject to applicable fare rule, as provided in the General Refund section of Rule 100 – Refunds." *See* Ex. B (Rule 75(B)(3); Ex. A, ¶ 2.

The general refund provision contained in Paragraph 100, as referenced in the applicable provisions, is based on fare-type and provides:

**Rule 100 - REFUNDS**. **A. General.** Refund by carrier: for unused ticket or portion thereof, or miscellaneous charges order, refund will be made in accordance with this Rule. …. (1) Economy Basic tickets are entirely non-refundable and hold no credit for future travel. For all other non-refundable tickets, the unused value may be used toward the purchase of another ticket within a year from date of issue if ticket is fully unused …

*See* Ex. B (Rule 100).  The Complaint references a specific provision concerning "Involuntary Refunds," which is inapplicable because the cancelation was wholly outside of Air Canada's control due to Government-mandated travel restrictions.  This provision is limited to circumstances "due to reasons within Air Canada's control or required for safety purposes."  *See* Ex. B (Rule 100(D)(1).  This provision, cited only in part in the Complaint carves out "circumstances that are outside of the carrier's control, such as situations described in … Rule 75 – REFUSAL TO

4

TRANSPORT."  *See* Ex. B (Rule 100(D)(3)).  And, in any event, it provides that "the amount of General Refund … **is subject to fare refundability in accordance with the fare rules**."  *See id.* (Rule 100(D)(4)(b)) (emphasis added).

### C.      Air Canada's Website

Though not part of the General Terms or Tariffs, Air Canada's website contains easy-to-access information for the ease of reference for passengers.  The Complaint selectively cites to a small portion of a webpage on "Refund Options" pre-Covid-19, including that "in the event of a flight cancellation or a delay of more than two hours, Air Canada offers you *the option of requesting* a refund for the unused portion of your ticket, or using the unused portion toward future travel with us."  Compl. ¶ 31.  As Plaintiff acknowledges, the web-page was updated with additional information to address the Covid-19 delays and cancellations, which were not contemplated at the time Plaintiff booked his ticket.  *See id*. ¶ 33. This information is based on the General Terms and Tariffs in effect and simply clarifies the distinction between refunds for cancellations within Air Canada's control and those outside of Air Canada's control:

> In the event of a flight cancellation or a delay of more than three hours, for situations other than those outside our control, Air Canada offers you the option of requesting a refund for the unused portion of your ticket, or using the unused portion toward future travel with us. Cancellations resulting from the COVID-19 crisis are considered outside our control.[4]

### D.      DOT Enforcement Notice and Frequently Asked Questions

As referenced in the Complaint, under the DOT Notice and FAQs, DOT stated that a failure to make a refund when the airline cancels or significantly changes a flight would be viewed as an "unfair and deceptive trade practice" prohibited by 49 U.S.C. § 41712.  The DOT Notice is a *policy*

---

[4]  https://www.aircanada.com/us/en/aco/home/fly/flight-information/delayed-flights-and-cancellations/refundoptions.html#:~:text=To%20Request%20a%20Refund,please%20call%20Air%20Canada%20Reservations.

"clarification," calling upon air carriers to offer passengers a refund of fares paid for flights that are cancelled or significantly changed, even if the tickets at issue were non-refundable and the airline was not at fault for the cancelation.  In the Notice, DOT acknowledged that there was confusion on this point, and, therefore, gave carriers a grace period to review and update their policies and practices and to start offering refunds as an option for a cancelled or significantly changed flight by the airline.[5]  On May 12, 2020, DOT issued FAQs, acknowledging that its Notice *does not* have the "force and effect" of law, but provides a safeguard against an enforcement action for those airlines that implement the recommended actions in the Notice.  DOT further stated, again in the form of guidance, that carriers may offer vouchers and credits to passengers, provided they also offer refunds as an alternative.

## STANDARD FOR RULE 12(b) DISMISSAL

To survive a 12(b)(6) motion, the claim must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572.  A court is "not bound to accept as true a legal conclusion couched as a factual allegation, nor [is it] required to accept as true allegations that are wholly conclusory."  Krys v. Pugott, 749 F.3d 117, 128 (2d Cir. 2014) (citations omitted).  Moreover, "[w]here …the allegations pled in the complaint are 'contradicted by documents on which the

---

[5] A carrier must (1) promptly inform the affected passengers of their option to receive a refund, (2) update its policies on and contracts of carriage regarding refunds, and (3) review with its personnel the circumstances under which refunds should be made.

complaint relies' the reviewing court 'need not accept as true an allegation' pled nor draw inferences in its favor." *Alexander v. Bd. of Educ.*, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015); se*e also Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 258 (S.D.N.Y. 2011) ("Allegations made within the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness."). When a document is "integral" to the complaint, a court may consider it on a motion to dismiss, even where the document is not attached or incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## ARGUMENT

## I. PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY THE AIRLINE DEREGULATION ACT

Plaintiff's state law claims seeking a ticket refund for a rescheduled flight are barred by the broad express preemption clause of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1), because his claims undisputedly relate to Air Canada's "prices" and "services."

### A. The ADA's Broad Scope Mandates Dismissal of Plaintiff's State Law Claims

In 1978, Congress enacted the ADA to deregulate the domestic airline industry. Congress's intent was to "help[] ensure transportation rates, routes and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality."[6] *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (citations omitted); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 230 (1995) (same). The preemption clause prohibits States from

> enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law ***related to a price, route, or service of an air carrier*** that may provide transportation under this subpart.

---

[6] In *Rowe*, the Court applied *Morales* to a similarly-worded preemption provision applicable to motor carriers found in the Federal Aviation Administration Authorization Act of 1994. *See* 49 U.S.C. § 1450(c)(1).

49 U.S.C. § 41713(b)(1) (emphasis added).

The U.S. Supreme Court has expressly addressed the broad scope of the ADA's preemption clause in a trilogy of cases: *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992); *American Airlines, Inc. v. Wolens*, and *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422 (2014).  In all three, the Supreme Court construed the clause's "related to" language as having a "broad preemptive purpose" such that state law claims "having a connection with or reference to airline '[prices], routes, or services' are preempted."  *Morales*, 504 U.S. at 383-84; *see also Wolens*, 513 U.S. at 223.  Preemption is construed so broadly that it may apply even where the connection with prices, routes, and services "is only indirect."  *Morales*, 504 U.S. at 386 (recognizing "sweep" of "relating to" language).  ADA preemption also extends to "laws of general applicability," to state laws that are "consistent" with federal laws, and to common law claims.  *Id.* at 386-87; *Ginsberg*, 134 S. Ct. at 1430 ("[S]tate common-law rules fall comfortably within the language of the ADA pre-emption provision.").  It is only where federal law affects a price, route, or service in a "tenuous, remote or peripheral … manner" that it may not preempt state law.  *Morales*, 504 U.S. at 390.

*Morales* and *Wolens* specifically addressed state consumer protection laws that would impose restrictions on fare-related matters and marketing practices by air carriers.  In *Morales*, state attorney-generals had issued guidelines that set standards for airline fare advertisements, awarding of frequent flyer miles, payment of denied boarding compensation, and other fare-related matters.  504 U.S. at 385.  The Court held that the states' efforts to enforce the guidelines through state consumer protection laws was preempted.  *Id.* at 388.

And in *Wolens*, the Court held that the ADA preempted plaintiffs' claim under an Illinois Consumer Fraud and Deceptive Practices Act (ICFA) challenging retroactive changes to the terms

in the airline's frequent flyer program.  513 U.S. at 225.  The Court found this claim to be "prescriptive," "intrusive" and "serv[ing] as a means to guide and police the marketing practices of the airlines."  513 U.S. at 228.  Although *Wolens* recognized a narrow exception from preemption where a state law claim seeks recovery for the airline's alleged breach of "its own, self-imposed undertaking," (*id.* at 228), that exception is confined to enforcing only "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  *Id*. at 233.

Most recently, in *Ginsberg*, the Supreme Court again applied the ADA's broad preemptive scope in a class action.  134 S. Ct. at 1430.  The *Ginsberg* Court found plaintiff's common law claim for breach of the implied covenant of good faith and fair dealing based on revocation of a customer's frequent flyer membership to be a "state-imposed obligation" and, therefore, preempted.  *Id*.  The foregoing cases—*Morales*, *Wolens*, and *Ginsberg*—collectively require dismissal of Plaintiff's claims based on ADA preemption.  *See Hekmat v. U.S. Transportation Sec. Admin*, 247 F. Supp. 3d 427, 431 (S.D.N.Y. 2017) (recognizing broad-scope of preemption articulated by the Supreme Court).

**B.**     **Plaintiff's State Law Claims Are Preempted Because They Relate to Air Canada's "Prices" and "Services"**

Plaintiff asserts the common law claims of breach of contract, conversion, unjust enrichment, deceptive acts or practices and false advertising (N.Y. Gen. Bus. Law. § 349 and § 350), and money had and received.  All of these claims directly challenge Air Canada's ticket prices and services as Plaintiff claims he is entitled to a refund of his ticket following the travel bans issued by the U.S. Government that precluded Air Canada from performing its transportation service.

An airline's ticket refund, cancellation, and reissuance policies directly relate to airline prices and services.  In *Statland v. Am. Airlines, Inc.*, the Seventh Circuit found it "obvious" that the airline's ticket refund policy related to prices and held plaintiff's state law claims − breach of fiduciary duty, fraud claims, conversion and breach of contract − *all* preempted by the ADA.  As held by the court,

> [t]he conduct [plaintiff] complains of is the same for each claim…: she protests American's withholding 10 percent of the federal tax on canceled tickets. We think it obvious that canceled ticket refunds relate to rates.  Under *Morales* and the [ADA], the state cannot regulate American's ticket refund practices either by common law or by statute.  This sweeps aside Statland's state law claims.

998 F.3d 539, 541–42 (7th Cir. 1993).

Similarly, in *Martin v. United Airlines, Inc.*, the court addressed an airline's refund policy and issuance of money-credits for cancelled flights, and concluded "there is no dispute that these claims relate to defendant's prices and services," and therefore are preempted.  No. 16-cv-1042, 2017 WL 3687347, at *5 (W.D. Okla. Apr. 18, 2017), *aff'd on other grounds*, 727 Fed. App'x 459 (10th Cir. 2018).[7]

Courts also consistently find unjust enrichment and other breach-of-contract type claims preempted where, like here, they relate to the airline's prices and services.  *See Lehman v. USAIR Group*, 930 F. Supp. 912, 915–16 (S.D.N.Y. 1996) (unjust enrichment and conversion claims based on excise taxes paid on cancelled tickets related to "price" and preempted by the ADA); *see also JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 320 (E.D.N.Y. 2005) ("[U]njust enrichment claims premised on the imposition of fees or collection of taxes quite obviously relate to airline rates."); *Alatortev v. JetBlue Airways, Inc.*, No. 3:17-cv-04859, 2018 WL 784434, at *6

---

[7] *See also Sanchez v. Aerovias de Mexico, S.A. de C.V.*, 590 F.3d 1027, 1030-31 (9th Cir. 2010) (ADA preempted claims based on airline's tourism fee as it related to "prices"); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34-35 (1st Cir. 2007) (ADA preempted state law claims that airline wrongfully retained fees and taxes on nonrefundable tickets).

(N.D. Cal. Feb. 7, 2018) (ADA preempted claims for breach of contract and unjust enrichment); *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) (finding it "well-settled" that unjust enrichment claims fall with the ADA's preemption clause).

Significantly, the U.S. Supreme Court and Second Circuit uniformly find consumer protection laws preempted by the ADA because, as more fully set forth below, the DOT has plenary authority in this area. *See Wolens*, 513 U.S. at 233 (holding consumer fraud claims preempted as type of prohibited action that relies on state law to enlarge or enhance the carrier's obligations); *Morales*, 504 U.S. at 378, 391 (recognizing DOT's authority to regulate consumer protection claims); *see also JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d at 315 (New York consumer fraud claims preempted by the ADA); *In re EVIC Class Action Litig.*, No. 00-cv-3811, 2002 WL 1766554, at *7–8 (S.D.N.Y. 2002) (relying on ADA cases and finding New York state-law fraud claims preempted by the nearly identical FAAA); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD1775(JG)(VVP), 2008 WL 5958061, at *17 (E.D.N.Y. Sept. 26, 2008), adopted in part, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), aff'd, 697 F.3d 154 (2d Cir. 2012) (state-law consumer protection and unfair competition claims based on an alleged conspiracy to fix, raise, or maintain prices preempted by the ADA).

Because all of Plaintiff's claims relate to Air Canada's ticket prices and ticketing and refund services, the claims are preempted by the ADA.

## C. Plaintiff's Breach of Contract Claim Does Not Fall Within the Narrow *Wolens'* Exception

*Wolens* held that a breach of contract claim was not preempted if it arose from "the airline's alleged breach of its own, self-imposed undertaking." 513 U.S. at 229. Contract claims, however, remain preempted if they enlarge or enhance the parties bargain based on state laws or policies external to the agreement. *See id.* at 233. In other words, where a court would need to insert terms

or look outside the contract to enforce an alleged meaning, it is plainly relying on state law theories or policies to imply terms in the agreement and is not enforcing a "self-imposed obligation."  *See, e.g.*, *Alatortev*, 2018 WL 784434, at *5–6; *Volodarskiy v. Delta Air Lines, Inc.*, No. 11 C 00782, 2012 WL 5342709 (N.D. Ill. Oct. 29, 2012) (breach of contract claim preempted because conditions of carriage did not incorporate by reference EU 261 regulations); *Schultz v. United Air Lines, Inc.*, 797 F. Supp. 2d 1103, 1106–07 (W.D. Wash. 2011) (ADA preempted breach of contract claim where plaintiff relied on external state laws).

Here, Plaintiff purports to rely on the DOT Notice for interpretation of Air Canada's General Terms and Tariffs.  The DOT Notice, however, is *not* part of the contract entered into by Plaintiff when he purchased his ticket in January 2020.  It was not part of Air Canada's self-imposed undertakings at that time, nor did it become part of it on April 3, 2020.  Plaintiff also relies on general principles of rescission, as opposed to the contract itself—which is notably absent from the breach of contract count contained in the Complaint.  Where a party "do[es] not seek to enforce the contract according to its terms" and instead "seek[s] to have this action declared unlawful by application of state laws and policies external to the parties agreement," then such breach of contract claims are preempted.  *Howell v. Alaska Airlines*, 99 Wash. App. 646, 994 P.2d 901 (2000) (state law claim contesting airline's refusal to refund the price of a non-refundable ticket is preempted).

At least one district court found preempted a straight-forward breach of contract claim based on an airline's purported failure to honor its contractual provisions by timely providing a refund due to Covid-19.  *See Daversa-Evdyriadis v. Norwegian Air Shuttle ASA.*, No. 20-cv-767, 2020 WL 5625740 (C.D. Cal. Sept. 17, 2020).  In that case, the court found plaintiff's complaint to be based on principles outside of the contract, including state-imposed deadlines for providing

12

refunds.  *See also Maree v. Deutsche Lufthansa*, No 20-cv-885, 2020 WL 6018806 (C.D. Cal. Oct. 7, 2020) (dismissing without prejudice breach of contract claims as plead as preempted by the ADA);*Castanares v. Deutsche Lufthansa AG*, No. 20-cv-4261, 2020 WL 6018807 (C.D. Cal. Oct. 9, 2020) (same).

Because Plaintiff relies on alleged obligations outside the four corners of the contract, he would be inserting terms not contained in the contact to bring this claim.  This is inconsistent with the *Wolens* exception and calls for dismissal of Plaintiff's breach of contract claim.  *See Alatortev,* 2018 WL 784434, at *5; *Schultz*, 797 F. Supp. 2d at 1103.

## II.    THE DOT ENFORCEMENT NOTICE DOES NOT PROVIDE A BASIS FOR A CAUSE OF ACTION AGAINST AIR CANADA

Even if not preempted, the Complaint asserts claims that are moot.  Specifically, all of Plaintiff's claims are predicated upon Air Canada's purported violation of the April 3, 2020 DOT Enforcement Notice, which does not provide a basis for a cause of action.  *See, e.g.*, *Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 366 (S.D.N.Y. 2007) (DOT regulations do not provide a private right of action for individuals).  On May 12, 2020, DOT issued FAQs, acknowledging that its Notice does not have the "force and effect" of law, but merely provides a safeguard against an enforcement action for those airlines that implement the recommended actions in the Notice.  DOT further stated that carriers may offer vouchers and credits to passengers, provided they also offer refunds as an alternative.  Plaintiff's reliance on the DOT Notice simply is misplaced – this Notice is a guidance document that does not create a binding requirement on the airline.  *See* Admin. Rulemaking, Guidance and Enforcement Procedures (Final Rule), 84 Fed. Reg. 71714, 71732 (Dec. 27, 2019) (DOT "may not use its enforcement authority to convert agency guidance documents into binding rules").  For this reason alone, all claims should be dismissed.

In any event, any violation of a federal rule or regulation does not provide a private right to a plaintiff.  Instead, DOT retains plenary authority to penalize Air Canada for any purported violation of federal regulations.  *See Morales*, 504 U.S. at 378, 391 (recognizing DOT's authority to regulate consumer protection claims).  In *Lagen v. United Cont'l Holdings, Inc.*, for example, the Circuit reiterated DOT's exclusive authority in the consumer protection arena, stating:

> Naturally, the ADA "does not give the airlines carte blanche to lie to and deceive consumers." What it does do, however, is channel grievances of this type to the [DOT], which is authorized to regulate such activities. That may not be as satisfying as a private right of action for the disappointed consumer, but that is the choice Congress made. … *If we were to sanction the transformation of consumer fraud claims into contract disputes in this way, we would fatally undermine the statutory scheme, which dictates that consumer fraud cases must be handled through the Department of Transportation*.

774 F.3d at 1128 (emphasis added) (citations omitted); *see also Statland*, 998 F.3d at 541 ("DOT, not private parties, will enforce consumer protection rules against the airlines").

The DOT—not Plaintiff and his putative class—have the authority to hold Air Canada responsible for any purported violations of the guidance or other DOT policy.  In fact, the DOT is considering Air Canada's response to passenger refunds due to the Covid-19 pandemic.

## III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST AIR CANADA

### A.   Plaintiff Fails to State a Claim for Breach of Contract (Count I)

The Complaint fails to state a claim for breach of contract.  To establish a breach of contract under New York law,[8] Plaintiff must show: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  The Court may dismiss a breach of contract claim where the "'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach."  *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y.

---

[8] Air Canada reserves its right to dispute the applicable law in this matter.

2020) (citing *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156–58 (2d Cir. 2016)).   A contract is not ambiguous "merely because the parties urge different interpretations."  *Id.*  Instead, the Court must interpret the contractual language with its "reasonable and ordinary meaning."  *Id.*  Because the plain language of the General Terms and Tariffs directly contradict Plaintiff's allegations of breach, the Court should dismiss Plaintiff's Breach of Contract claim (Count I).

Plaintiff acknowledges that Plaintiff's transportation with Air Canada is governed by the General Terms and the Tariffs.  *See* Compl. ¶¶ 29-33.  Both are incorporated by reference into every passenger's contract for transportation.  *See* 14 C.F.R. §§ 253.4(a), 253.5 (a); *see also* Declaration of Sarah G. Passeri, Ex. A ("General Terms") and Ex. B ("Tariffs") in effect on December 30, 2019, *i.e.*, the date of contract.  Plaintiff also relies on the Tariffs in his Complaint, as well as other portions of Air Canada's website.  *See* Compl. ¶¶ 29-33.

Because the terms of the agreement between Plaintiff and Air Canada are unambiguous and show that Air Canada complied with its contractual obligations, the Court should dismiss the breach of contract claim.  Pursuant to both the General Terms and Tariffs, Air Canada is not obligated to reimburse tickets where the flight cancellation is beyond Air Canada's control and where Air Canada offers alternative travel arrangements.  The General Terms provide that "[i]f your flight is delayed by more than three hours or cancelled because of a situation that's outside of [Air Canada's] control," Air Canada will arrange alternative travel for the passenger.  *See* Ex. A at ¶ 2.  If the passenger refuses the alternative travel arrangements because "travelling no longer serves a purpose," the General Terms provides that any refund "is subject to the fare rules applicable."  *See id.*  The General Terms also provide that "[f]or full terms and conditions applicable to your carriage please consult our tariffs."  *See id.* at introduction.

With respect to the Tariffs, Rule 75(A)(1) allows the carrier to refuse transportation where:

> Such action is necessary to comply with any governmental regulations … or whenever such action is necessary or advisable by reason of weather or other conditions beyond its control (including but without limitation: acts of god, force majeure, strikes, civil commotions, embargoes, wars, hostilities or disturbances) actual, threatened or reported.

In any case, the refund or credit provided is expressly "subject to applicable fare rule, as provided in the General Refund section of Rule 100 – Refunds."  *See* Ex. B (Rule 75(B)(3); Ex. A, ¶ 2. Moreover, the general refund provision contained in Paragraph 100, as referenced in the above-referenced applicable provisions, is based on fare-type and provides:

> **Rule 100 - REFUNDS**. **A. General.**  Refund by carrier: for unused ticket or portion thereof, or miscellaneous charges order, refund will be made in accordance with this Rule. …. (1) Economy Basic tickets are entirely non-refundable and hold no credit for future travel. For all other non-refundable tickets, the unused value may be used toward the purchase of another ticket within a year from date of issue if ticket is fully unused …

*See* Ex. B (Rule 100).  As Plaintiff admits, his ticket was for an economy seat and therefore non-refundable.  Federal regulations expressly acknowledge and allow for more restrictions on non-refundable tickets in exchange for a lower purchase price.  *See, e.g.*, DOT Order 2012-11-4 at 5; DOT Order 2003-3-11 at 2 ("Thus, the lower price for non-refundable tickets is a trade-off for passengers agreeing to a restriction that allows a carrier to manage its inventory and cash flow.").

The Complaint references a specific provision concerning "Involuntary Refunds," which is inapplicable because the cancellation was wholly outside of Air Canada's control due to Government-mandated travel restrictions.  This provision is limited to circumstances "due to reasons within Air Canada's control or required for safety purposes."  *See* Ex. B (Rule 100(D)(1). This provision, cited only in part in the Complaint, carves out "circumstances that are outside of the carrier's control, such as situations described in … Rule 75 – REFUSAL TO TRANSPORT." *See* Ex. B (Rule 100(D)(3)).  And, in any event, it expressly provides that "the amount of General

Refund … ***is subject to fare refundability in accordance with the fare rules***." *See id.* (Rule 100(D)(4)(b)) (emphasis added).

Plaintiff was scheduled for non-essential travel from Japan to the United States after the United States Government implemented measures to preclude all non-essential traveling due to the Covid-19 pandemic. *See also* Compl. ¶ 27 ("the airline had cancelled his return flight due to COVID-19."). Plaintiff's flight was therefore cancelled for reasons outside Air Canada's control. Moreover, Air Canada properly offered Plaintiff a voucher for his cancelled flight, as required by the agreement between the parties. *See* Compl. ¶ 39. As a result, pursuant to the unambiguous contract between the parties, Air Canada complied with its contractual obligations: nowhere in any agreement is Air Canada required to issue a refund for an economy class ticket. Any reference to a portion of its website indicating the manner in which refunds are generally allocated across ticket holders, is taken out of context and, in any event, is not part of the contract.

Because the plain language of the contract contradicts Plaintiff's allegations of breach, the Court should dismiss Plaintiff's breach of contract claim (Count I). *Perks*, 444 F. Supp. 3d at 639.

### B.   Plaintiff Fails to State a Claim for Conversion (Count II), Unjust Enrichment (Count III), and Money Had and Received (Count V)

Plaintiff asserts various equitable claims against Air Canada including that Air Canada is holding Plaintiff's funds and has converted the money to its own use (Count II- Conversion); Air Canada would be unjustly enriched if it retained Plaintiffs' funds (Count VI- Unjust Enrichment); Air Canada has funds from the Plaintiff which should not be retained (Count V- Money Had and Received). Plaintiff's claims fail because Air Canada issued travel vouchers to Plaintiff and Air Canada had no contractual or legal obligation to refund Plaintiff for his otherwise non-refundable ticket under these circumstances.

To state a claim for unjust enrichment, plaintiff must allege that "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016). Plaintiff's unjust enrichment claim fails here as Air Canada offered to issue travel vouchers to Plaintiff.

The elements of money had and received "largely mirror those of unjust enrichment: '(1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.'" *Cohen v. Dunne*, No. 15 CIV. 3155 (DAB), 2017 WL 4516820, at *5 (S.D.N.Y. Sept. 27, 2017). Likewise, Plaintiff's money had and received claim fails here as Air Canada offered to issue travel vouchers to Plaintiff.

Plaintiff's conversion claims similarly fails. Conversion is the "exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000). Again, Plaintiff's conversion claim fails here as Air Canada offered to issue travel vouchers to Plaintiff. Air Canada did not "interfere" with Plaintiff's property and did not exercise unauthorized dominion over Plaintiff's funds because Plaintiff purchased a non-refundable ticket and, in exchange for the cancelled flight segment, received a travel voucher per the applicable agreement between the parties.

Importantly, all three claims are precluded because there is an express contract between the parties addressing the same subject matter. Courts will dismiss causes of action for conversion, money had and received, and unjust enrichment where there is an express contract between the parties that governs the relationship. *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d

392, 415–16 (S.D.N.Y. 2013) (claim for conversion, money had and received, and unjust enrichment precluded where there is an express contract between the parties that govern the subject matter); *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (finding that "an action for conversion cannot lie where damages are merely sought for breach of contract"); *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020) ("It is well settled that a claim for unjust enrichment will not lie if the parties have a contract.").  Here, the Complaint failed to set forth allegations which would constitute a wrong separate and distinct from an alleged breach of contract which could give rise to independent liability for conversion, unjust enrichment, or money had and received.  Accordingly, these claims should be dismissed.

### C.   Plaintiff Fails to State a Claim for Deceptive Acts or Practices and False Advertising (Count IV)

To establish a prima facie case for Deceptive Acts or Practices (Section §349) and False Advertising (Section §350), Plaintiff must demonstrate that Air Canada's purported deceptive acts were directed at consumers, the purported deceptive acts were misleading in material ways, and Plaintiff was injured as a result of the purported deceptive acts.  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016).  Section §350 has the same elements as Section §349 except that Plaintiff must also demonstrate that Air Canada's advertisement has an impact on "consumers at large."  *Id.*

The Complaint fails to establish any of the elements for Deceptive Acts or Practices (Section §349) and False Advertising (Section §350).  First, as explained above, the consumer protection claims are undisputedly preempted (*see supra* pgs.7-13).  In addition, and as previously addressed, pursuant to the General Terms and Tariffs, Air Canada is not obligated to reimburse non-refundable tickets where the flight cancellation is beyond Air Canada's control and where Air Canada offers alternative travel arrangements (*see supra* pgs. 14-17).  Air Canada did not falsely

represent that it did not have an obligation to refund customers for flights it cancelled and Air Canada did not engage in any "deceptive acts."  Plaintiff simply cannot establish any deceptive conduct on the part of Air Canada—which is an essential element to claims under Section §349 and Section §350.  *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016). Accordingly, Plaintiff failed to state a claim for Deceptive Acts or Practices and False Advertising (Count IV).

## <u>CONCLUSION</u>

The Court should grant the motion in all respects and dismiss Plaintiff's claims in their entirety.

Dated:  November 13, 2020

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
　　　　Sarah G. Passeri
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010
Email: sarah.passeri@hklaw.com

*Attorneys for Defendant*
*Air Canada*

TO:　　Stephen J. Fearon, Jr., Esq.
　　　　Squitieri & Fearon, LLP
　　　　32 East 57th Street
　　　　New York, New York 10022
　　　　Telephone.: 212-421-6492
　　　　Email: Stephen@sfclasslaw.com

*Attorneys for Plaintiff and the Proposed Class*